UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ARTHUR GREEN, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )  CASE NO.:  2:06-CV-1597-VEH |
| | ) |
| UNITED STATES STEEL | ) |
| CORPORATION, | ) |
| | ) |
|    Defendant. | ) |

## MEMORANDUM OPINION

### I.     INTRODUCTION

This lawsuit originated in the Circuit Court of Jefferson County on August 4, 2006. (Doc. #1 ¶ 1). On August 14, 2006, Defendant United States Steel Corporation ("USS") filed a Notice of Removal and removed the litigation to this court asserting jurisdiction under 28 U.S.C. § 1332 and § 1331.  (Doc. #1).

Pending before the court is Plaintiff District Attorney Arthur Green's (the "D.A.") Motion to Remand (Doc. #7) filed on September 15, 2006.  USS filed its response to the D.A.'s Motion to Remand (Doc. #9) on September 29, 2006.  As discussed more fully below, as the court concludes that it does not have either diversity or federal question jurisdiction over the D.A.'s claims against USS, the case is due to be remanded to the Circuit Court of Jefferson County for lack of subject

matter jurisdiction.

## II.   BACKGROUND

This case arises out of the loading and transporting of steel coils from USS's facilities in Fairfield, Alabama, to various markets by means of Alabama and Jefferson County highways. (Doc. #1 at C ¶ 5). The D.A. has filed suit against USS in his capacity as District Attorney of Jefferson County of the Bessemer Division. (*Id.* ¶ 1). Plaintiff brings his case pursuant to the authority bestowed to him under Ala. Code § 12-17-184(3) and (7). (*Id.* ¶ 4).

The D.A. maintains that USS "has violated criminal laws as well as civil laws in the State of Alabama and has caused damage on numerous occasions to the State of Alabama property by damaging its highways and . . . creat[ing] circumstances where grave risk of harm will occur to Alabama citizens." (*Id.* ¶ 15). The D.A. seeks to enjoin USS "from continuing to endanger the motoring public in Jefferson County in the manner in which steel coils are loaded on trucks from their facility/plant." (*Id.* ¶ 16).

## III.   ANALYSIS

The burden of establishing subject matter jurisdiction for the purposes of removal to this court is on the removing defendant. *See Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001) ("Because this case was originally filed in state

court and removed to federal court by Best Buy, Best Buy bears the burden of proving that federal jurisdiction exists.") (citation omitted). "The court should determine its jurisdiction over the case 'based upon the plaintiff's pleadings at the time of removal.'" *Fowler v. Provident Life & Accident Ins. Co.*, 256 F. Supp. 2d 1243, 1246 (N.D. Ala. 2003).

USS maintains that this court may properly exercise jurisdiction over the D.A.'s complaint under either the diversity or federal question statute. For the various reasons discussed below, the court disagrees.

### A.   No diversity jurisdiction exists because the State of Alabama is not a nominal party in the D.A.'s lawsuit.

"Diversity jurisdiction exists where the suit is between citizens of different states and the amount in controversy exceeds the statutorily prescribed amount, in this case $75,000." *Best Buy*, 269 F.3d at 1319; *see* 28 U.S.C. § 1332(a). The parties' jurisdictional dispute under § 1332 is whether the State of Alabama is a nominal versus a real party in interest. If Alabama is anything more than a nominal litigant, then the court does not have diversity jurisdiction because a state is not a citizen for purposes of § 1332.[1] *Moor v. County of Alameda*, 411 U.S. 693, 717 (1973) ("There

---

[1] In the absence of the State of Alabama as a real party, diversity of citizenship exists as the D.A. is a resident and citizen of this state, and USS is a citizen of both Delaware and Pennsylvania pursuant to § 1332(c)(1). (Doc. #1 ¶¶ 3-4).

is no question that a State is not a 'citizen' for purposes of the diversity jurisdiction."); *see also State of Ala. ex rel. Galanos v. Star Service & Petroleum Co., Inc.*, 616 F. Supp. 429, 430 (D.C. Ala. 1985) ("This case calls upon the Court to decide whether the state of Alabama is the real party plaintiff. If so, this case must be remanded to state court."). Similarly, if this lawsuit is "[a] suit by an agent of the state as a nominal party in behalf of the state [the case] presents a controversy to which the state is a party, and cannot be removed." *Robertson v. Jordan River Lumber Co.*, 269 F. 606, 607 (5th Cir. 1921).[2]

In support of its removal, USS notes that the State of Alabama is not a named party and maintains that the D.A. is acting solely as a representative "on behalf of and for the benefit of Jefferson County." (Doc. #9 at 2 (footnote omitted)). The omission of the State of Alabama as a named party is not determinative of the state interest's issue. Also, while the primary geographic focus of the case is on Jefferson County, the complaint is not without allegations pertinent to the State of Alabama.

The Alabama statutory authority upon which the D.A. relies in bringing this case provides in pertinent part that:

> It is the duty of every district attorney and assistant attorney, within the

---

[2]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

> circuit, county, or other territory for which he or she is elected or appointed: . . .
>
> (3) To prosecute and defend any civil action in the circuit court in the prosecution or defense of which the state is interested. . . .
>
> (7) To perform other duties and exercise other powers as are or may be required by law. . . .

*See* Ala. Code § 12-17-184 (delineating district attorneys' "[p]owers and duties generally"). As explained in *Star Service*, "Alabama law expressly confers upon the district attorney the duty of prosecuting civil actions on behalf of the state." 616 F. Supp. at 430 (citing Ala. Code §§ 6-5-1, 12-17-184(3) (1975)).

In *Star Service*, the United States District Court for the Middle District of Alabama was faced with determining whether Alabama was a real party in interest in a lawsuit filed by a district attorney for Mobile County, Alabama, under the Alabama Motor Fuel Marketing Act. 616 F. Supp. at 430. In concluding that no diversity jurisdiction existed because Alabama was a real party plaintiff, the court analyzed a host of cases involving similar legal postures to the one facing it (and this court). *Id.* at 431 (discussing *Olsen v. Doerfler*, 225 F. Supp. 540, 541 (E.D. Mich. 1963)) (county prosecutor suing in his official capacity to enjoin the sale and distribution of allegedly obscene materials with State of Michigan as real party in interest); *Eure v. NVF Co.*, 481 F. Supp. 639, 641 (E.D.N.C. 1979) (suit by the secretary of state in his

official capacity as "alter ego" of state to enforce compliance with a North Carolina securities statute); *Nuclear Eng'g Co. v. Scott*, 660 F.2d 241, 250 (7th Cir. 1981) (state attorney general acting in his official capacity with State of Illinois as real party plaintiff); *State of New York ex rel. Abrams v. General Motors Corp.*, 547 F. Supp. 703, 705-06 & 705 n.5 (S.D.N.Y. 1982) (state attorney general suing to enjoin various fraudulent business practices as "quasi-sovereign interest" with State of New York as real party)).[3]

---

[3]As explained by the United States District Court for the Southern District of New York:

> The concept of quasi-sovereign interests finds its origin in the cases dealing with *parens patriae* standing. Broadly stated, quasi-sovereign interests
>
> > consist of a set of interests that the state has in the well-being of its populace.
> >
> > Although the articulation of such interests is a matter for case-by-case development-neither an exhaustive formal definition nor a definitive list of qualifying interests can be presented in the abstract-certain characteristics of such interests are so far evident. These characteristics fall into two general categories. First, a state has a quasi-sovereign interest in the health and well-being-both physical and economic-of its residents in general. Second, a state has a quasi-sovereign interest in not being discriminatorily denied its rightful status within the federal system.

*Ex rel. Abrams*, 547 F. Supp. at 705 n.5 (citations omitted).

Based upon its review of these cases,[4] this court concludes that Alabama is a real party plaintiff in this litigation for at least two reasons: 1) procedurally, the D.A. has brought suit, as a state statutory agent, on the basis that the state is an interested party; and 2) substantively, the State of Alabama has an interest in keeping its highways safe and undamaged for its motorists.

That residents of Jefferson County may be intended as the primary beneficiaries of this lawsuit does not matter because "[w]hether other parties will benefit from this action does not affect the state's valid interest[.]" *Star Service*, 616 F. Supp. at 431. Similarly, the fact that the D.A.'s demand for relief includes the payment of a fine to the citizens of Jefferson County and a demand for damages to Jefferson County highways (Doc. #9 at Ex. C ¶16(3)-(4)) does not alter the court's analysis. As explained in *Star Service*:

> Nor can it be argued that the County of Mobile is the real party because any funds recovered go into the county treasury. Ala. Code § 8-22-16(b)

---

[4]The cases relied upon by USS to persuade this court otherwise are not applicable because not one of them addresses the issues of (i) a county officer suing pursuant to express statutory authority as an agent of a state; or (ii) a state as a real party plaintiff because of its quasi-sovereign interest in the litigation. Instead, the opinions cited by USS primarily involve either (i) the potential liability of a county or other municipal party as a defendant, or (ii) the prosecution of a contract or other legal right belonging to the local entity as a plaintiff, neither of which would normally be expected to trigger any state interests. The remaining decisions merely make passing references to when diversity jurisdiction may exist between a county and a diverse defendant.

(1975). The county is an arm of the state, and although it is a citizen for purposes of diversity, *Moor v. County of Alameda*, 411 U.S. 693, 721, 93 S. Ct. 1785, 1801-02, 36 L. Ed. 2d 596 (1973), the mere fact of possible recovery of a penalty does not vitiate the state's interest as *parens patriae*.

616 F. Supp. at 431. The court agrees with this analysis. Accordingly, diversity jurisdiction does not exist.

    **B.**    **No federal question jurisdiction exists because no substantial federal interest is at stake nor does complete preemption apply.**

Alternatively, USS argues that this court has federal question jurisdiction due to the D.A.'s attempt to make an "end run" around the Federal Motor Carrier Safety Regulations ("FMCSR"). (Doc. #9 at 3, 8). Under the well-pleaded complaint rule, federal question jurisdiction exists under § 1331 if "federal law creates the cause of action" or the plaintiff's "right to relief necessarily depends on resolution of a substantial question of federal law." *Pruitt v. Honda of American Manufacturing, Inc.*, No. 3:06-0128, 2006 WL 889498, *3 (M.D. Tenn. Mar. 28, 2006) (citing *Eastman v. Marine Mechanical Corp.*, 438 F.3d 544, 550 (6th Cir. 2006)).

    **1.**    **The D.A.'s complaint does not sufficiently trigger any substantial federal interest under the FMCSR.**

The D.A.'s complaint makes no express references to the FMCSR. Instead, USS maintains that the pleading implicitly "requires resolution of a substantial

question of federal law." (Doc. #9 at 9 (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 163-64 (1977) (internal citations omitted)); *see also Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 125 S. Ct. 2363, 2367 (2005) ("[I]n certain cases federal question jurisdiction will lie over state-law claims that implicate significant federal issues.") (citation omitted).

However, at the same time, USS urges that it is not a responsible party under the FMCSR, as the regulatory scheme "unequivocally place[s] this responsibility [of properly securing coils on trucks] on the trucking companies, who transport products—not on companies like U.S. Steel who merely manufacture the products." (Doc. #9 at 10 (citing 49 C.F.R. § 392.9 (2002)). Put differently, while USS strains to read the triggering of a substantial federal interest pertaining to the FMCSR into the D.A.'s complaint, it also defends on the grounds that the FMCSR do not apply to it. If USS is clearly beyond the scope of the FMCSR, then the D.A.'s complaint does not call for an obvious resolution of a substantial federal issue.

Moreover, the court does not agree with USS that the D.A.'s lawsuit is incompatible with the FMCSR. While the focus of the FMCSR are on the regulation of motor vehicle carriers, USS has not established that the FMCSR prohibit the enforcement of any local laws designed to enhance commercial motor vehicle safety. To the contrary, the FMCSR explicitly "promote adoption and enforcement of State

9

laws and regulations pertaining to commercial motor vehicle safety that are compatible with appropriate parts of the Federal Motor Carrier Safety Regulations." 49 C.F.R § 355.3.

Furthermore, the FMCSR do not provide for any private cause of action. While such an omission is not necessarily determinative of the substantial federal interest issue, the absence of any private right to litigate is a relevant clue for this court to consider. *See Grable & Sons*, 125 S. Ct. at 2370 ("*Merrell Dow* should be read in its entirety as treating the absence of a federal private right of action as evidence relevant to, but not dispositive of, the 'sensitive judgments about congressional intent' that § 1331 requires."); *see also Merrell Dow Pharm. v. Thompson*, 478 U.S. 804, 814 (1986) ("[T]he congressional determination that there should be no federal remedy for the violation of this federal statute is tantamount to a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently 'substantial' to confer federal-question jurisdiction.") (footnote omitted).

The *Grable & Sons* Court likened "a missing [federal] cause of action" to "a missing welcome mat, required in the circumstances" to unlock federal jurisdiction under § 1331, as opposed to "a missing federal door key, always required[.]" 125 S. Ct. at 2370. In clarifying the scope of its prior decision is *Merrell Dow*, the Court

pointed to the combined importance of "no federal cause of action and no preemption of state remedies for misbranding as an important clue to Congress's conception of the scope of jurisdiction to be exercised under § 1331." *Id.* Finally, the Court summarized the appropriate framework for determining the existence of a substantial federal interest as "examining the importance of having a federal forum for the issue, and the consistency of such a forum with Congress's intended division of labor between state and federal courts." *Id.* at 2371.

Against this backdrop, the interest under the FMCSR advanced by USS is not sufficiently substantial, based upon the *Grable & Sons* framework and other relevant guideposts, including the absence of a private cause of action and any preemptive language. Accordingly, USS's argument that federal question jurisdiction exists because the D.A.'s complaint implicates a substantial federal interest under the FMCSR fails.

> **2. Neither the United States Supreme Court nor the Eleventh Circuit has held that complete preemption exists under the FMCSR.**

Complete preemption occurs when "the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal' claim for purposes of the well-pleaded complaint rule." *Smith v. GTE Corp.*, 236 F.3d 1292, 1311 (11th Cir. 2001) (citations omitted). The Labor

Management Relations Act ("LMRA") and the Employee Retirement Income Security Act ("ERISA") are the only two federal statutes as to which the United States Supreme Court has expressly found the doctrine of complete preemption to apply. *Id.* As observed by the Eleventh Circuit:

> "[A]lthough the Supreme Court recognizes the existence of the complete preemption doctrine, the Court does so hesitatingly and displays no enthusiasm to extend the doctrine into areas of law beyond the LMRA and ERISA." *Id.* at 856. Similarly, this Court has yet to find complete preemption outside the context of the LMRA and ERISA. *Id.*

*Smith*, 236 F.3d at 1311 (quoting *BLAB T.V. of Mobile, Inc. v. Comcast Cable Communications, Inc.*, 182 F.3d 851, 855 (11th Cir. 1999)). Also, the application of the complete preemption doctrine presupposes the existence of at least some preemptive language, which is non-existent in the FMCSR. Accordingly, diversity jurisdiction based upon complete preemption under the FMCSR does not exist either.

## IV.   CONCLUSION

As analyzed above, the court lacks both diversity and federal question jurisdiction over the D.A.'s complaint. Accordingly, there is no subject matter jurisdiction to support USS's removal to this court, and the D.A.'s Motion to Remand is due to be granted. The court will enter an order consistent with this Memorandum Opinion remanding the case to the Circuit Court of Jefferson County.

**DONE** and **ORDERED** this 6th day of October, 2006.

_____
**VIRGINIA EMERSON HOPKINS**
United States District Judge